1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

10  JACK D. RILEY,                    ) 1:09-cv—01012-AWI-SKO-HC
                                      )
11              Petitioner,           ) FINDINGS AND RECOMMENDATIONS TO
                                      ) DENY RESPONDENT'S MOTION TO
12                                    ) DISMISS (DOC. 20) AND DIRECT THE
        v.                            ) FILING OF A RESPONSE TO THE
13                                    ) PETITION
    JAMES HARTLEY, Warden,            )
14                                    ) OBJECTIONS DUE WITHIN 30 DAYS
                Respondent.           )
15                                    )
                                      )
16  _____ )

17      Petitioner is a state prisoner proceeding pro se and in

18  forma pauperis with a petition for writ of habeas corpus pursuant

19  to 28 U.S.C. § 2254.  The matter has been referred to the

20  Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local

21  Rules 302 and 304.  Pending before the Court is Respondent's

22  motion to dismiss, which was filed and served on March 8, 2010

23  (doc. 20).  Petitioner filed and served on Respondent an

24  opposition on March 20, 2010.  No reply was filed.  Pursuant to

25  Local Rule 230(l), the motion is submitted upon the record

26  without oral argument.

27      I.  Motion to Dismiss

28      Respondent has filed a motion to dismiss the petition on the

1

ground that Petitioner filed his petition outside of the one-year limitation period provided for by 28 U.S.C. § 2244(d)(1).

Rule 4 of the Rules Governing Section 2254 Cases (Habeas Rules) allows a district court to dismiss a petition if it "plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court...."

The Ninth Circuit has allowed respondents to file motions to dismiss pursuant to Rule 4 instead of answers if the motion to dismiss attacks the pleadings by claiming that the petitioner has failed to exhaust state remedies or has violated the state's procedural rules. See, e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990) (using Rule 4 to evaluate a motion to dismiss a petition for failure to exhaust state remedies); White v. Lewis, 874 F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 to review a motion to dismiss for state procedural default); Hillery v. Pulley, 533 F.Supp. 1189, 1194 & n.12 (E.D. Cal. 1982) (same). Thus, a respondent may file a motion to dismiss after the Court orders the respondent to respond, and the Court should use Rule 4 standards to review a motion to dismiss filed before a formal answer. See, Hillery, 533 F. Supp. at 1194 & n. 12.

In this case, Respondent's motion to dismiss addresses the untimeliness of the petition pursuant to 28 U.S.C. 2244(d)(1). The material facts pertinent to the motion are mainly to be found in copies of the official records of state judicial proceedings which have been provided by Respondent and Petitioner, and as to which there is no factual dispute. Because Respondent has not filed a formal answer and because Respondent's motion to dismiss

1   is similar in procedural standing to a motion to dismiss for

2   failure to exhaust state remedies or for state procedural

3   default, the Court will review Respondent's motion to dismiss

4   pursuant to its authority under Rule 4.

5       II. <u>The Limitations Period</u>

6       On April 24, 1996, Congress enacted the Antiterrorism and

7   Effective Death Penalty Act of 1996 (AEDPA), which applies to all

8   petitions for writ of habeas corpus filed after its enactment.

9   <u>Lindh v. Murphy</u>, 521 U.S. 320, 327 (1997); <u>Jeffries v. Wood</u>, 114

10  F.3d 1484, 1499 (9th Cir. 1997). Petitioner filed his petition

11  for writ of habeas corpus on May 29, 2009. Thus, the AEDPA

12  applies to the petition.

13      The AEDPA provides a one-year period of limitation in which

14  a petitioner must file a petition for writ of habeas corpus. 28

15  U.S.C. § 2244(d)(1). It further identifies the pendency of some

16  proceedings for collateral review as a basis for tolling the

17  running of the period. As amended, subdivision (d) provides:

18      (d)(1) A 1-year period of limitation shall apply to
        an application for a writ of habeas corpus by a person
19      in custody pursuant to the judgment of a State court.
        The limitation period shall run from the latest of --
20
21          (A) the date on which the judgment became final by
            the conclusion of direct review or the expiration
            of the time for seeking such review;
22
            (B) the date on which the impediment to filing an
23          application created by State action in violation of
            the Constitution or laws of the United States
24          is removed, if the applicant was prevented from
            filing by such State action;
25
            (C) the date on which the constitutional right
26          asserted was initially recognized by the
            Supreme Court, if the right has been newly
27          recognized by the Supreme Court and made
            retroactively applicable to cases on collateral
28          review; or

                                3

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

III.  <u>Factual Summary</u>

On May 14, 1992, Petitioner was convicted after a jury trial of second degree murder and being an accessory in violation of Cal. Pen. Code §§ 187, 32, and 12022.5.  (Pet. 2.)  Petitioner is confined at Avenal State Prison (ASP), where he is serving a sentence of sixteen (16) years to life imposed on June 11, 1992. (Pet. 1-2; Mot. Ex. 2, doc. 20-11, 1-2.)

The petition challenges a decision of the California Board of Parole Hearings (BPH) made on June 26, 2007, determining that Petitioner was ineligible for parole because he would pose an unreasonable risk of danger to society.  (Memo., doc. 2, 1.)  The transcript of the parole proceedings reflects a thirteen-page decision.  (Pet. Ex. B 498-510; Mot. Ex. 1 pt. 8, doc. 20-9, 69-81.)  The transcript shows an adjournment on that date, with the following notation thereafter:

PAROLE DENIED TWO YEARS.

THIS DECISION WILL BE FINAL ON: OCT 24 2007

YOU WILL BE PROMPTLY NOTIFIED IF, PRIOR TO THAT

DATE, THE DECISION IS MODIFIED.

JACK RILEY   H-38609   DECISION PAGE 13   06/26/2007

(Pet. Ex. B 498-510, Mot. Ex. 1 pt. 8, doc. 20-9, 81.)

Neither party suggests that the decision of the BPH was

4

altered in any respect after its pronouncement on June 26, 2007.
Petitioner does not assert that any action occurred after the
decision of June 26, 2007, that could present a basis to consider
the decision on Petitioner's application for parole to have been
amended or otherwise superseded.

On June 4, 2008, Petitioner filed a petition for writ of
habeas corpus in the Superior Court of the State of California,
County of San Bernardino (SBSC), challenging the BPH's decision
of the same date. (Mot. Ex. 1, doc. 20-2.) The petition was
denied on August 27, 2008, on the ground that some evidence
supported the Board's decision. (Mot. Ex. 2, doc. 20-11.)

On October 17, 2008, Petitioner filed a petition for habeas
corpus in the Court of Appeal of the state of California, Fourth
Appellate District (DCA). (Mot. Ex. 3, doc. 20-12.) The
petition was summarily denied on October 31, 2008. (Mot. Ex. 4,
doc. 20-19.)

On November 14, 2008, Petitioner filed a petition for review
in the California Supreme Court. (Mot. Ex. 5, doc. 20-20 [date
of filing illegible].) On January 14, 2009, the petition was
summarily denied. (Mot. Ex. 6, doc. 20-21.)

Petitioner filed the petition that is before the Court on
May 29, 2009. (Doc. 1.)

IV. Commencement of the Running of the Limitation Period

The parties agree that the determination of the date on
which the limitation period began to run is governed by
§ 2244(d)(1)(D), which specifies the date on which the factual
predicate of a claim could have been discovered through the
exercise of reasonable diligence. See, Redd v. McGrath, 343 F.3d

5

1  1077, 1085 (9th Cir. 2003).

2      However, the parties disagree about the date on which the
3  limitations period began to run.  Petitioner argues that he
4  discovered the factual predicate of his claim pursuant to
5  § 2244(d)(1)(D) when the BPH's decision became final in October
6  2007, but Respondent contends that Petitioner learned of the
7  factual predicate when the BPH initially announced its decision
8  in June 2007.

9      It is established that a decision, or the vacating of a
10  decision, can constitute a factual matter within the meaning of
11  28 U.S.C. § 2255(f)(4), the analogous statute of limitations for
12  petitions brought pursuant to § 2255, which also provides for
13  commencement of the limitations period on "the date on which the
14  facts supporting the claim or claims presented could have been
15  discovered through the exercise of due diligence."  In <u>Johnson v.</u>
16  <u>United States</u>, 544 U.S. 295, 298 (2005), the Court applied
17  § 2255(f)(4) to a decision vacating a state conviction that in
18  turn had been relied upon by a federal court at sentencing to
19  establish career offender status and thereby to enhance the
20  federal sentence.  The Court held that the petitioner was obliged
21  to act diligently to obtain the order vacating the predicate
22  conviction, and the one-year limitation period would begin to run
23  from the date the petitioner received notice of the order
24  vacating the conviction.  544 U.S. at 310.

25      With respect to the discovery of the factual predicate of a
26  claim alleging an unconstitutional denial of parole, the Ninth
27  Circuit Court of Appeals has not decided whether the triggering
28  event is the initial decision denying parole or the point at

which the decision becomes final.  In <u>Redd v. McGrath</u>, 343 F.3d
1077, 1085 (9th Cir. 2003), the date chosen by the court to
trigger the running of the statute was the date upon which the
administrative decision to deny parole became final, which was
when an administrative appeal taken by the petitioner had been
denied.  343 F.3d at 1080, 1083-1084.  The court determined that
the point at which the petitioner first could have learned of the
factual basis for his claim that the parole decision violated his
constitutional rights was on the date of the administrative
tribunal's denial of the petitioner's administrative appeal.  The
court relied on decisions of other federal courts which had held
that the statute begins running under § 2244(d)(1)(D) on the date
"the administrative decision became final."  <u>Id.</u> at 1084.[1]

          Generally, it is not knowledge of some facts pertinent to a
claim that constitutes discovery of a factual predicate within
the meaning of § 2244(d)(1)(D); rather, it is knowledge of facts
constituting reasonable grounds for asserting all elements of a
claim in good faith.  <u>Hasan v. Galaza</u>, 254 F.3d 1150, 1154-55
(9th Cir. 2001).  The time begins to run when the prisoner knows,
or through diligence could discover, the important facts, and not
when the prisoner recognizes their legal significance; it is not
necessary for a petitioner to understand the legal significance
of the facts themselves before the obligation to exercise due
diligence commences and the statutory period starts running.  <u>Id.</u>
at 1154 n. 3.

-----

[1] Because of waiver of the issue by a party, the court in <u>Redd</u> did not
consider whether the initial administrative decision was sufficient to trigger
§ 2244(d)(1)(D).  <u>Id.</u> at 1084 n. 11, 1081 n. 6.

1    Here, the parole decision itself stated that it would not be
2 final for 120 days.  At all pertinent times, the state statute
3 that provides for the parole suitability hearing and decision has
4 also expressly provided for review of the decision before
5 finality.  Cal. Pen. Code § 3041(a), (b); 2005 Cal. Stat. ch. 10
6 § 29.  The state statute has also stated that any decision
7 granting parole becomes final within 120 days of the date of the
8 hearing.  Cal. Pen. Code § 3041(b).  The pertinent regulations
9 have provided that parole decisions of the board after a hearing
10 "are proposed decisions and shall be reviewed prior to their
11 effective date in accordance with" specified procedures.  Cal.
12 Code Regs. tit. 15, § 2041(a) (2010).  It is expressly provided
13 that "[a]ny proposed decision granting, modifying, or denying a
14 parole date for a life prisoner... shall become final no later
15 than 120 days after the hearing at which the proposed decision
16 was made."  Cal. Code Regs. tit. 15, § 2043 (2010); see, Cal.
17 Code Regs. tit. 15, § 2041(h).

18    As of May 1, 2004, California's prisoners no longer were
19 able to lodge administrative appeals of parole decisions.  See,
20 Cal. Code Regs. tit. 15, § 2050 (repealed May 1, 2004).  Rivera
21 v. Mendoza-Powers, No. CV 09-04873 ABC (AN), 2009 WL 2448019, *2
22 (C.D. Cal. August 7, 2009).  However, the absence of an
23 administrative remedy for the prisoner does not serve to negate
24 the state's clear statutory and regulatory law providing that a
25 decision pronounced at a hearing is not final and, indeed, is not
26 even an actual decision, as distinct from a proposed decision.
27 Under these circumstances, the initial, proposed decision cannot
28 logically constitute all the facts constituting reasonable

grounds for asserting a claim challenging a parole decision because the most important and necessary phenomenon of a decision has not yet occurred.

Considering the date upon which the parole decision becomes final as the triggering event is consistent with other cases in the circuit applying § 2244(d)(1)(D) to administrative decisions. For example, the finality of a prison disciplinary decision has been held to be the significant event causing the one-year period under § 2244(d)(1)(D) to begin running. Shelby v. Bartlett, 391 F.3d 1061, 1066 (9th Cir. 2004) (limitation period began to run the day after the petitioner received timely notice of the denial of his administrative appeal challenging the disciplinary decision).

The authorities were recently summarized in Baker v. Kramer, No. CIV- S-S-08-0311 FCD DAD P, 2010 WL 1027537, at *3 (E.D. Cal. March 18, 2010):

> The statute of limitations for habeas petitions challenging parole suitability hearings is based on § 2244(d)(1)(D): the date on which the factual predicate of the claim or claims could have been discovered through the exercise of due diligence. See Redd v. McGrath, 343 F.3d 1077, 1079 (9th Cir.2003). "Courts ordinarily deem the factual predicate to have been discovered the day the decision becomes final, i.e., 120 days after the Board finds a petitioner not suitable for parole." Wilson v. Sisto, No. Civ. S-07-0733 MCE EFB P, 2008 WL 4218487, at *2 (E.D.Cal. Sept. 5, 2008) (citing Nelson v. Clark, No. 1:08-cv-00114 OWW SMS HC, 2008 WL 2509509, at *4 (E.D.Cal. June 23, 2009)). See also Stotts v. Sisto, No. CIV. S-08-1178-MCE CMK-P, 2009 WL 2591029, at *4 (E.D.Cal. Aug. 20, 2009); Van Houton v. Davison, No. CV 07-05256 AG (AN), 2009 WL 811596, at *9 (C.D.Cal. March 26, 2009); Woods v. Salazar, No. CV 07-7197 GW (CW), 2009 WL 2246237, at *5 & n.9 (C.D.Cal. Mar. 23, 2009) (citing cases); Perez v. Sisto, No. Civ. S-07-0544 LKK DAD P, 2007 WL 3046006, at *4 (E.D.Cal. Oct. 18, 2007); Cal. Code Regs., tit. 15, § 2041(h) (Board decisions are final 120 days after the hearing); Cal. Penal Code § 3041(b) (same). Contra McGuire v.

9

1   Mendoza-Powers, No. 1:07-CV-00086 OWW GSA HC, 2008 WL
    1704089, at *10 (E.D.Cal. April 10, 2008) (deeming
2   factual predicate to have been discovered on the date
    of the Board decision). Following the majority of
3   district courts to have considered this issue, the
    undersigned concludes that the factual predicate of
4   petitioner's claims was "discovered" when the Board's
    decision denying parole became final on August 17,
5   2006.

6   Baker v. Kramer, 2010 WL 1027537, *3.  Accord Tidwell v.

7   Marshall, 620 F.Supp.2d 1098, 1100-01, (C.D. Cal. 2009)

8   (rejecting the respondent's contention that the statute began to

9   run on the date of the parole hearing because pursuant to

10  California law as reflected in Cal. Code Regs. tit. 15, §§

11  2041(a), (h) and 2043, board decisions are characterized as

12  proposed decisions subject to review before an effective date

13  upon finality 120 days after the hearing at which the proposed

14  decision was made); Gardner v. Hartley, No. CV 09-2088-VBF (JEM),

15  2010 WL 770364, * 1-2 (C.D. Cal. February 23, 2010); Castillo v.

16  Small, No. 09cv1474 JM(AJB), 2009 WL 188888, *2 (S.D. Cal.

17  January 23, 2009); Guzman v. Curry, No. C 08-2066 SI (pr), 2009

18  WL 1468723, *1-2 (N.D. Cal. May 22, 2009).

19      The Court has considered the contrary view noted in the

20  previously quoted portion of Baker v. Kramer, 2010 WL 1027537, at

21  *3 (E.D. Cal. March 18, 2010).  However, the pertinent state

22  statutes and regulations appear to be premised upon policies to

23  promote orderly administrative processes and to identify clearly

24  the point at which administrative action becomes final.  The

25  Court discerns no countervailing policy that is sufficient to

26  warrant considering the date of an incipient, non-final decision

27  as the date on which the factual predicate of a claim could have

28  been diligently discovered.

1    Relying on the finality of the parole decision to trigger

2    the running of the period is also consistent with decisions in

3    other circuits.  Wade v. Robinson, 327 F.3d 328, 333 (4th Cir.

4    2003) (claims concerning state parole board's decision to revoke

5    parole and rescind conduct credits accrued under § 2244(d)(1)(D)

6    when the state parole board's decision to revoke his parole

7    became final because that date was when the petitioner could have

8    discovered through public sources that the decision was in

9    effect); Cook v. New York State Div. of Parole, 321 F.3d 274,

10   280-81 (2nd Cir. 2003); Dulworth v. Evans, 442 F.3d 1265, 1268-69

11   (10th Cir. 2006); but see, Kimbrell v. Cockrell, 311 F.3d 361,

12   364 (5th Cir. 2002) (noting that although the initial decision

13   triggered the running of the statute, the pendency of

14   administrative appeals would toll the running of the statute).

15   In summary, the Court concludes that the date on which the

16   factual predicate of a decision on Petitioner's parole could

17   have been discovered through the exercise of reasonable diligence

18   was upon the decision's finality, occurring one hundred twenty

19   (120) days after the decision was rendered on June 26, 2007, or

20   on October 24, 2007.

21   V. Statutory Tolling pursuant to § 2244(d)(2)

22   Commencing on October 25, 2007, the day after the finality

23   of the BPH's decision, two hundred and twenty-three (223) days

24   passed before Petitioner filed the first state habeas petition in

25   the Superior Court on June 4, 2008.

26   Section 2244(d)(2) provides:

27   The time during which a properly filed application
     for State post-conviction or other collateral review
28   with respect to the pertinent judgment or claim is

pending shall not be counted toward any period of
limitation under this subsection.

Here, the petition was pending in the SBSC from June 4, 2008,
through August 27, 2008, when the SBSC denied it.

Thereafter, Petitioner filed a petition in the DCA on
October 17, 2008, approximately fifty (50) days after the
Superior Court's denial of the previous petition.

An application for collateral review is "pending" in state
court "as long as the ordinary state collateral review process is
'in continuance'--i.e., 'until the completion of' that process."
Carey v. Saffold, 536 U.S. 214, 219-20 (2002).

In California, a prisoner seeking collateral review must
file a habeas petition within a reasonable time.  Carey, 536 U.S.
at 221-23.  In the absence of clear direction or explanation from
the California Supreme Court about the meaning of the term
"reasonable time," and where the issue of timeliness in a given
case has not been addressed by the state court, federal courts
must now "examine the delay in each case and determine what the
state courts would have held in respect to timeliness."  Evans v.
Chavis, 546 U.S. 189, 198 (2006).

In the present case, the statute of limitations will be
tolled from the time the first state habeas petition was filed
until the California Supreme Court rejected the petitioner's
final collateral challenge, as long as the petitioner did not
"unreasonably delay" in seeking review.  Carey v. Saffold, 536
U.S. at 221-23; accord Nino v. Galaza, 183 F.3d 1003, 1006 (9th
Cir. 1999).

Here, the state courts did not expressly rule on the

1    timeliness of Petitioner's filings.  The delay between the

2    Superior Court's denial and the Petitioner's filing of a petition

3    in the DCA was about fifty (50) days.  The California Supreme

4    Court has not provided direction on what period of time or

5    factors constitute substantial delay in noncapital cases.  <u>See</u>,

6    <u>King v. LaMarque</u>, 464 F.3d 963, 966 (9th Cir. 2006).  Thus, it

7    will be assumed that California law does not differ significantly

8    from the laws of other states, and that California's standard of

9    reasonable time does not produce filing delays substantially

10   longer than those in states with determinate timeliness rules.

11   <u>Evans v. Chavis</u>, 546 U.S. at 198-200.  Most states permit delays

12   of thirty (30) to sixty (60) days.  <u>Chaffer v. Prosper</u>, 592 F.3d

13   1046, 1048 (9th Cir. 2010).

14        The Court concludes that Petitioner's delay of about fifty

15   (50) days before filing a petition in the DCA was reasonable.

16   Further, after the DCA denied the petition on October 31, 2008,

17   Petitioner delayed only two weeks before filing a petition for

18   review in the California Supreme Court on November 14, 2008.

19   Again, this was a reasonable delay.

20        Accordingly, the statute was tolled from June 4, 2008, when

21   the first petition was filed in the Superior Court, through

22   January 14, 2009, the date on which the California Supreme Court

23   denied the petition for review.  Respondent correctly so

24   concedes.  (Mot. 4:11-13.)

25        In summary, the computation of the statutory period thus

26   begins on October 25, 2007, the day after the decision of the BPH

27   became final.  Fed. R. Civ. P. 6(a)(1); <u>Patterson v. Stewart</u>, 251

28   F.3d 1243, 1245-46 (9th Cir. 2001) (holding analogously that the

correct method for computing the running of the one-year grace
period after the enactment of AEDPA was pursuant to Fed. R. Civ.
P. 6(a), in which the day upon which the triggering event occurs
is not counted).  A total of two hundred twenty-three (223) days
passed until the filing of the first state petition on June 4,
2008.  The running of the statute was tolled from that date until
the state highest court's denial on January 14, 2009.  On January
15, 2009, the limitations period began to run again, and counting
that date, one hundred thirty-five (135) days passed until the
filing of the petition here on May 29, 2009.

Thus, the Court concludes that a total of three hundred
fifty-eight (358) days of the limitation period passed before
Petitioner filed his petition here.  The petition was thus filed
within the one-year limitations period and therefore was timely.

Accordingly, the Court concludes that Respondent's motion to
dismiss on the grounds of untimeliness should be denied.

VI.  <u>Response to the Petition</u>

On January 7, 2010, Respondent was directed by this Court to
file a response to the petition.  Respondent filed a motion in
place of an answer.  If, as is recommended herein, the motion to
dismiss is denied, then in order to proceed to make the case
ready for decision, the Court should direct Respondent to file an
answer to the petition within sixty (60) days.

VII.  <u>Recommendation</u>

Accordingly, it is RECOMMENDED that:

1) Respondent's motion to dismiss the petition for
untimeliness be DENIED; and

2) Respondent be DIRECTED to file an answer to the petition

14

1  within sixty (60) days of service of the order denying the
2  motion.

3        These findings and recommendations are submitted to the
4  United States District Court Judge assigned to the case, pursuant
5  to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of
6  the Local Rules of Practice for the United States District Court,
7  Eastern District of California.  Within thirty (30) days after
8  being served with a copy, any party may file written objections
9  with the Court and serve a copy on all parties. Such a document
10 should be captioned "Objections to Magistrate Judge's Findings
11 and Recommendations."  Replies to the objections shall be served
12 and filed within fourteen (14) days (plus three (3) days if
13 served by mail) after service of the objections.  The Court will
14 then review the Magistrate Judge's ruling pursuant to 28 U.S.C. §
15 636 (b)(1)(C).  The parties are advised that failure to file
16 objections within the specified time may waive the right to
17 appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d
18 1153 (9th Cir. 1991).

19
20 IT IS SO ORDERED.

21 **Dated:    June 20, 2010**              _____/s/ Sheila K. Oberto_____
22                                         UNITED STATES MAGISTRATE JUDGE